## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MAINE

| | |
|---|---|
| In Re: 19-10306-MAF | ) Chapter 7   Proceeding |
| | ) |
| **John A. Knappe and Ellen Dawn Knappe** | ) |
|     Debtor | ) |
| | ) |
| **The Bank of New York Mellon Fka The Bank of New York, As Trustee For The Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7** | ) |
|     Movant | ) |
| | ) |
| vs. | ) |
| | ) |
| **John A. Knappe and Ellen Dawn Knappe and Nathaniel R. Hull, Esq., Trustee** | ) |
|     Respondent | ) **July 26, 2019** |

### NOTICE OF HEARING

PLEASE TAKE NOTICE that a hearing will be held at **Bankruptcy Courtroom – Room 30600, 202 Harlow Street, Bangor, ME 04401** on **August 22, 2019 at 2:00pm** to consider and act upon the following:

- Motion for Relief from Automatic Stay on behalf of The Bank of New York Mellon Fka The Bank of New York, As Trustee For The Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7

Objections to the Motion for Relief from Stay due by August 15, 2019.

By */s/ Andrew S. Cannella*
Andrew S. Cannella
The Movant's Attorney
Bendett & McHugh, P.C.
270 Farmington Avenue, Suite 171
Farmington, CT 06032
Phone (860) 677-2868
Fax (860) 409-0626
Email: BKECF@bmpc-law.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| In Re: 19-10306-MAF | ) | **Chapter 7 Proceeding** |
| | ) | |
| **John A. Knappe and Ellen Dawn Knappe** | ) | |
| Debtor | ) | |
| | ) | |
| **The Bank of New York Mellon FKA The Bank of New York, As Trustee For The Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7** | ) | |
| Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **John A. Knappe and Ellen Dawn Knappe** | ) | |
| **and Nathaniel R. Hull, Esq., Trustee** | ) | |
| Respondent | ) | **July 26, 2019** |

### CERTIFICATION OF SERVICE

The undersigned (the "Movant") hereby certifies that, on or before the 26th day of July, 2019, a copy of the Motion for Relief, a copy of the proposed order, and a copy of the hearing notice were served to the following:

John A. Knappe and Ellen Dawn Knappe
Debtors
10 Norway Drive
Hampden, ME 04444
*Via First Class Mail*

Nathaniel R. Hull, Esq.
Trustee
*Via Electronic Notice of Filing*

William N. Palmer
Debtor's Attorney
*Via Electronic Notice of Filing*

U.S. Trustee
*Via Electronic Notice of Filing*

By */s/ Andrew S. Cannella*
    Andrew S. Cannella
    The Movant's Attorney
    Bendett & McHugh, P.C.
    270 Farmington Avenue, Suite 171
    Farmington, CT 06032
    Phone (860) 677-2868
    Fax (860) 409-0626
    Email: BKECF@bmpc-law.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| In Re: 19-10306-MAF | ) **Chapter 7 Proceeding** |
| | ) |
| **John A. Knappe and Ellen Dawn Knappe** | ) |
| Debtor | ) |
| | ) |
| **The Bank of New York Mellon FKA The Bank of New York, As Trustee For The Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7** | ) |
| Movant | ) |
| | ) |
| vs. | ) |
| | ) |
| **John A. Knappe and Ellen Dawn Knappe and  Nathaniel R. Hull, Esq., Trustee** | ) |
| Respondent | ) **July 26, 2019** |

## MOTION FOR RELIEF FROM AUTOMATIC STAY
### (REAL PROPERTY)

The Bank of New York Mellon FKA The Bank of New York, As Trustee For The

Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7 ("Movant") hereby

moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to

certain real property of the Debtor, John A. Knappe, having an address of 19 Naylor Street,

Bangor, ME 04401 (the "Property").  In further support of this Motion, Movant respectfully states:

1.    A petition under Chapter 7 of the United States Bankruptcy Code was filed with

respect to the Debtor on June 21, 2019.

2.    The Debtor has executed and delivered or is otherwise obligated with respect to that

certain promissory Note in the original principal amount of $24,460.00 (the "Note").  A copy of

the Note is attached to the Local Rule Worksheet filed contemporaneously herewith. As of the date

hereof, Movant or its custodian and/or agent is in possession of the Note. Movant is an entity

entitled to enforce the Note.

3.       Pursuant to that certain Mortgage dated April 18,2006 and recorded April 20, 2006

in the office of Penobscot County, Maine, at Book 10395, Page 308 (the "Mortgage"), all

obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and

the Mortgage are secured by the Property. A copy of the Mortgage is attached to the Local Rule

Worksheet filed contemporaneously herewith.

4.       As evidenced by the Assignment of Mortgage and Quitclaim Assignment attached

to the Local Rule Worksheet filed contemporaneously herewith, the Mortgage has been assigned to

Movant.

5.       As of the petition date, the outstanding amount of the Obligations less any partial

payments or suspense balance was $66,849.56.

6.       As of the July 3, 2019, the outstanding Obligations are:

| | |
|---|---|
| Unpaid Principal Balance | $24,449.38 |
| Unpaid, Accrued Interest | $42,131.51 |
| Uncollected Late Charges | $0.00 |
| Mortgage Insurance Premiums | $0.00 |
| Taxes and Insurance Payments on behalf of Debtor(s) | $0.00 |
| Other Costs | $370.00 |
| **Less**: Partial Payments | ($0.00) |
| Minimum Outstanding Obligations | $66,950.89 |

7.       The foregoing Other Costs consist of the following:

| Pre-petition or Post-petition | Fee Description | Amount |
|---|---|---|
| Pre-Petition | Property Inspections | $370.00 |

8.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $750.00 in legal fees and $181.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

9.     The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor as of July 3, 2019:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 156 | 08/01/2006 | 07/01/2019 | $275.36 | $42,956.16 |

**Total:  $42,956.16**

10.     The estimated fair market value of the Property is $121,000.00. The basis for such valuation is the Movant's valuation, a copy of the relevant portions of which is attached hereto as Exhibit D.

11.     Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, listed in order of priority, are:

| Holder & Holder's Address | Type | Amount |
|---|---|---|
| The Bank of New York Mellon FKA The Bank of New York, As Trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7 – c/o Specilized Loan Servicing LLC, 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129 | 1st Recorded Mortgage | $201,299.25 |
| Movant – c/o Bendett & McHugh, P.C., 270 Farmington Ave., Suite 171, Farmington, CT 06032 | 2nd Recorded Mortgage | $66,950.89 |

**Total: $268,250.14**

12.     Local Bankruptcy Form 4001-1(b) (the "Local Rule Worksheet") has been filed contemporaneously herewith.

13.     Pursuant to 11 U.S.C. § 362(d)(1), cause exists for relief from the automatic stay for the following reasons:

(a) Debtor is contractually due for the August 1, 2006 payment.

14.     Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

15.     Accrued interest as of the date of the petition was approximately $42,030.18. The total pre-petition arrearage of $66,849.56 is broken down as follows: 155 payments in the amount of $275.36 each, for a total of $42,680.80; and property inspection fees in the amount of $370.00. The next payment due is in the amount of $275.36.

16.     After consultation with the Trustee and Debtor's Attorney, consent to relief could not be obtained.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

    1.   Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

    2.   That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    3.   For such other relief as the Court deems proper.

The Bank of New York Mellon FKA
The Bank of New York, As Trustee For
The Certificateholders of CWABS Inc.,
Asset-Backed Certificates, Series 2006-7

By /s/*Andrew S. Cannella*
   Andrew S. Cannella
   The Movant's Attorney
   Bendett & McHugh, P.C.
   270 Farmington Avenue, Suite 171
   Farmington, CT 06032
   Phone (860) 677-2868
   Fax (860) 409-0626
   Email: BKECF@bmpc-law.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7 Proceeding** |
| | ) | |
| **John A. Knappe and Ellen Dawn** | ) | |
| **Knappe** | | |
| **Debtor** | ) | |
| | ) | **In Re: 19-10306-MAF** |
| | ) | |

## ORDER GRANTING RELIEF FROM AUTOMATIC STAY

The Bank of New York Mellon FKA The Bank of New York, As Trustee For The

Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7 (the "Movant") filed

the Motion for Relief From Automatic Stay Dkt. No. _____ (the "Motion"). After notice and

opportunity for hearing, the Motion is granted on the following terms:

1. Under 11 U.S.C. § 362(d), relief from the automatic stay is granted to permit the Movant and its successors and assigns to enforce the state law rights and remedies arising from the loan and security agreements described in the Motion with respect to (i) the real estate owned by **John A. Knappe and Ellen Dawn Knappe** located at **19 Naylor Street, Bangor, ME 04401** and more particularly described in the mortgage filed with the Motion and (ii) any incidental property (as defined by the Bankruptcy Code) related to such real estate.

2. The stay imposed by Fed. R. Bankr. P. 4001(a)(3) is not applicable.

Date: _____

_____
Honorable Michael A. Fagone
United States Bankruptcy Judge
District of Maine

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re: John A. Knappe and Ellen Dawn Knappe

Case No.: 19-10306-MAF

Chapter 7

## WORKSHEET IN SUPPORT OF MOTION FOR  RELIEF FROM STAY

I, Christine Harding , as a/an Assistant Vice President of Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP. as servicer for The Bank of New York Mellon FKA The Bank of New York, As Trustee For The Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7 (Movant) do hereby declare, certify, verify, or state:

## BACKGROUND INFORMATION

1.   The address or general description of the real property that is the subject of this motion: 19 Naylor Street, Bangor, ME 04401

2.   Name and address of original mortgagee: Countrywide Home Loans, Inc. – 4500 Park Granada, MSN# SVB-314, Calabasas, CA 91302-1613

3.   Dates of the Note and Mortgage: April 18, 2006

4.   If Movant is different from the original mortgagee, the status of Movant (e.g., holder, assignee, or servicing agent): The Mortgage has been assigned to Movant, and Movant is an entity entitled to enforce the Note and Mortgage.

5.   Current address of Movant and payment address if different: P.O. Box 15222, Wilmington, DE 19886-5222

6.   Brief statement of Movant's standing (e.g., mortgagee, assignee, servicing agent) and the availability of supporting documentation or other supporting information: Movant is an entity entitled to enforce the Note and Mortgage.  Copies of the Note and Mortgage and assignment of Mortgage are attached hereto as Exhibits A, B & C, respectively.

## DEBT/VALUE REPRESENTATIONS

7.      Total pre-petition and post-petition indebtedness of debtor to Movant at the time of filing the motion: $66,950.89 [1].  (Note: this amount may not be relied upon as a "payoff" quotation.)

8.      Movant's estimated market value of the real property: $121,000.00

9.      Source of estimated valuation: Movant's Valuation/Appraisal

## STATUS OF DEBT AS OF
## THE PETITION DATE

10.      Total pre-petition indebtedness of debtors to Movant as of petition filing date: $66,849.56 [2].

        A.      Amount of Principal: $24,449.38
        B.      Amount of Interest: $42,030.18
        C.      Amount of escrow (taxes and insurance): $0.00
        D.      Amount of forced placed insurance expended by Movant: $0.00
        E.      Amount of attorneys' fees incurred pre-petition that have been or will be charged to the debtor: $0.00
        F.      Amount of pre-petition late fees, if any, billed to debtor: $0.00

11.      Contractual Interest Rate:  13.250% (If interest rate is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect.  A separate exhibit may be attached to this form.  If so, it is marked Exhibit N/A)

12.      Please explain any additional pre-petition fees, charges, or amounts charged to debtor's account and not listed above: $370.00 (A separate exhibit may be attached to this form. If so, it is marked Exhibit N/A)

## AMOUNT OF POST-PETITION DEFAULT
## (AS OF 07/03/2019)

13.      Date last payment was received: 07/12/2006

---

[1] The total pre-petition and post-petition indebtedness listed in paragraph 7 is as of July 3, 2019.

[2] The total pre-petition indebtedness listed in paragraph 10 is net of partial payments held in the amount of $0.00.

14.     Alleged number of contractual payments due post-petition from filing of petition through payment due on 07/01/2019: 1

15.     Please list all post-petition payments alleged to be in default:

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied To Principal | Amount Applied To Interest | Amount Applied To Escrow | Late Fee Charged (If Any) |
|---|---|---|---|---|---|---|
| 07/01/2019 | $275.36 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTALS** | **$275.36** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** |

16.     Amount of Movant's attorney's fees charged or to be charged to the debtor for the preparation, filing, and prosecution of this motion: $750.00

17.     Amount of Movant's filing fee for this motion:  $181.00

18.     Other attorneys' fees charged or to be charged to the debtor post-petition: $0.00

19.     Amount of Movant's post-petition inspection fees: $0.00

20.     Amount of Movant's post-petition appraisal/broker's price opinion: $0.00

21.     Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00

22.     Sum held in suspense by Movant in connection with this contract, if applicable: $0.00

23.     Amount of other post-petition charges or advances by Movant to be paid by the debtor, for example: taxes, insurance incurred by debtor, etc.:  $0.00

## REQUIRED ATTACHMENTS

The following documents are attached to this worksheet in support of the motion and marked as exhibits:

(1)     Copies of documents showing Movant's interest in the subject property (e.g., a complete and legible copy of the promissory note or other debt instrument together with a complete and

legible copy of the mortgage and any assignment in the chain from the original mortgagee to the Movant. (Exhibits A, B & C)

(2)     Copies of documents showing proof of standing to bring this motion for relief if different than the above.   (Exhibits A, B & C)

## CERTIFICATION FOR BUSINESS RECORDS

The information provided in this worksheet and/or any exhibits attached to this worksheet (other than the transactional documents attached as required by paragraphs 1 and 2 immediately above) is derived from records that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice.

Further, the copies of any transactional documents attached to this worksheet as required by paragraphs 1 and 2 immediately above, are true and accurate copies of the original documents.

## DECLARATION

I, Christine Harding                , a/an Assistant Vice President              (Name and Title) of Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP. as servicer for The Bank of New York Mellon FKA The Bank of New York, As Trustee For The Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7 (Movant) hereby declare (or certify, verify, or state) pursuant to 28 U.S.C. Section 1746 under penalty of perjury that the foregoing is true and correct based on personal knowledge of the Movant's books and business records.

Executed at  Simi Valley           (City/Town),  CA      (State) on this  24th   day of
July     (Month),    (Year). 2019

Christine Harding           (Print Name)
Assistant Vice President      (Title)
Bank of America, N.A. Servicer for Movant   (Movant)
1800 Tapo Canyon Rd      (Street Address)
Simi Valley, CA           (City, State)
93063               (Zip Code)

**EXHIBIT A**

Prepared by: JAIMIE BOWLIN

LOAN #: ▮▮▮▮▮▮

# BALLOON NOTE
### (Maine)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

APRIL 18, 2006                     BANGOR                     MAINE
[Date]                              [City]                     [State]

19 NAYLOR STREET, BANGOR, ME 04401-3319
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 24,460.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   13.250 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**
**(A) Time and Place of Payments**
I will pay Principal and interest by making a payment every month.
I will make my monthly payment on the   FIRST          day of each month beginning on
JUNE 01, 2006          . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 743.65

**●** SECONDARY BALLOON FIXED RATE NOTE
Maine Second Lien Fixed Rate Balloon Note
1E426-ME (08/05)(d)                     Page 1 of 3



LOAN #:

**(C) Balloon Payment and Right to Refinance**

If, on  MAY 01, 2021  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." Such payment is known as a Balloon Payment. At least 60 days and not more than 180 days prior to the Maturity Date of this loan, the Lender will notify the undersigned, in writing, of the Maturity Date and the Balloon Payment due on the Maturity Date. The Lender shall, at the time of notification of the Maturity Date and Balloon Payment (the "Notification"), also provide the undersigned with the right to refinance the amount of the final payment in order to fully amortize the obligation on terms then generally offered by the Lender. The undersigned must satisfy the credit standards required by the Lender and the Property must satisfy Lender's loan-to-value standards. The undersigned must notify the Lender in writing within 30 days after receiving the Notification whether or not he/she wishes to refinance with the Lender.

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." I may make a Full Prepayment or a Partial Prepayment without paying any fee. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

[X] I may prepay this Note in full at any time without penalty.

[  ] If within the first _____ months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the lesser of 5% of my overdue payment, or U.S. $10.00. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

* SECONDARY BALLOON FIXED RATE NOTE
Maine Second Lien Fixed Rate Balloon Note
1E426-ME (09/05)                                        Page 2 of 3

LOAN #: ▇▇▇▇▇▇

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
JOHN A.  KNAPPE                                    -Borrower

PAY TO THE ORDER OF                               _____
                                                                    -Borrower

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC                        _____
                                                                    -Borrower
BY _____
   David A. Spector
   Managing Director                              _____
                                                                    -Borrower

● SECONDARY BALLOON FIXED RATE NOTE
Maine Second Lien Fixed Rate Balloon Note
1E426-ME (09/05)                              Page 3 of 3

Prepared by: JAIMIE BOWLIN

**COUNTRYWIDE HOME LOANS, INC.**

DATE: 04/18/2006
BORROWER: JOHN A. KNAPPE
CASE #:
LOAN #:
PROPERTY ADDRESS: 19 NAYLOR STREET
BANGOR, ME 04401-3319

Branch #: 0006147
2595 W CHANDLER BLVD
CHANDLER, AZ 85224
Phone: (866) 628-4995
Br Fax No.: (480) 821-6381

## DOCUMENT CORRECTION AND FEES DUE AGREEMENT

**AGREEMENT TO CORRECT MISSTATED OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Lender disbursing funds for the closing of the Loan secured by the Property being encumbered, and regardless of the reason for any loss, of misplacement, of inaccuracy in, or failure to sign any Loan documentation, Borrower(s) agrees as follows: If any document is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan, or otherwise missing upon request of the Lender, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary to replace or correct the lost, misplaced, misstated, inaccurate or otherwise missing document(s). If the original promissory note is replaced, the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower(s) agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement. Borrower(s) also agrees that at any time, upon request by Lender, including at the time of loan pay-off, Borrower(s) will supply additional amounts and/or pay to Lender any additional sum previously disclosed to Borrower(s) as a cost or fee associated with the Loan, which for whatever reason was not collected at closing ("Fees"). Such amount due from Borrower(s) may also be off-set by Lender from any funds held by Lender, for Borrower's benefit, after loan pay-off. Borrower(s) further agrees that if funds are collected by Lender at closing to pay any outstanding Escrow Items for (a) taxes and assessments; (b) hazard or property insurance premiums; (c) leasehold payments or ground rents on the property; (d) flood insurance premiums; or (e) mortgage insurance premiums, and if those Escrow Items have been or are paid by Lender from Borrower's old escrow account, then Lender may retain those funds to reimburse Lender for any shortage in Borrower's old escrow account that results from such payment.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender, (including assignees and persons acting on behalf of the Lender) or Settlement Agent, and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower(s) at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for the Documents.

**FAILURE TO DELIVER DOCUMENTS CAN CONSTITUTE DEFAULT:** If the Loan is to be guaranteed by the Department of Veterans Affairs ("VA") or insured by the Federal Housing Administration ("FHA"), Borrower(s) failure or refusal to comply with the terms of the correction request may constitute a default under the note and/or deed of trust, and may give Lender the option of declaring all sums secured by the loan documents immediately due and payable. If applicable, Borrower(s) further acknowledges that Lender estimated the amount of the one-time FHA Mortgage Insurance Premium (MIP) or VA Funding Fee at the time the loan was made. Borrower(s) hereby agrees and consents that Lender has the right to apply to the debt any amount held by the Lender in excess of the actual MIP or VA Funding Fee, as an offset against the debt.

**BORROWER LIABILITY:** If Borrower(s) fails or refuses to execute, acknowledge, initial and deliver the Documents or pay the Fees to Lender more than ten (10) days after being requested to do so by Lender, and understanding that Lender is relying on these representations, Borrower(s) agree(s) to be liable for any and all loss or damage which Lender reasonably sustains thereby, including but not limited to all reasonable attorney's fees and costs incurred by Lender.

**RETURNED PAYMENTS:** The Borrower understands and agrees that for the life of the loan, Borrower will be charged a fee for each transaction that results in nonpayment from Borrower's financial institution account. The maximum amount that Borrower will be charged is that legally permitted in the state the property associated with this loan is located, unless otherwise expressly limited or prohibited by law.

**This agreement shall survive the closing of the Loan, and inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devisees, personal representatives, successors and assigns of Borrower(s).**

_____
(Seller/Contractor)

JOHN A KNAPPE _____
(Borrower)

_____
(Borrower)

_____
(Seller/Contractor)

_____
(Borrower)

FHA/VA/CONV
● Document Correction and Fees Due Agreement
2C040-US (08/04)(d)

_____
(Borrower)

**EXHIBIT B**

BK 10395 Pg308 #12481
04-20-2006 @ 01:51p

After Recording Return To:

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
JAIMIE BOWLIN




───────────────────── [Space Above This Line For Recording Data] ─────────────────────

[Loan #]

## MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Mortgage." This document, which is dated APRIL 18, 2006        , will be called the "Mortgage."

(B) "Borrower."

JOHN A KNAPPE

will sometimes be called the "Borrower" and sometimes simply "I."

(C) "Lender."

COUNTRYWIDE HOME LOANS, INC.

will be called the "Lender." Lender is a

A CORPORATION

which exists under the laws of NEW YORK                      . Lender's address is

4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

(D) "Note." The junior lien note signed by Borrower and dated APRIL 18, 2006        , and extensions and renewals of that note, will be called the "Note." The Note shows that I owe Lender U.S. $24,460.00          plus interest, which I have promised to pay in full by MAY 01, 2021          .

**MAINE** - SECOND MORTGAGE - 11/98

Page 1 of 10

**VMP** ®-76P(ME) (0308)     CHL (09/05)(d)     VMP Mortgage Solutions, Inc. (800)521-7291




LOAN #: ▮▮▮▮▮▮▮

(E) "Property." The property that is described below in the section titled "Description of the Property" will be called the "Property."

(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender, subject to the terms of this Mortgage, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Mortgage, I am giving Lender those rights that are stated in this Mortgage and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note;

(B) Pay, with interest, any amounts that Lender spends under this Mortgage to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Mortgage.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the following Property:

(A) The property which is located at

19 NAYLOR STREET, BANGOR

[Street, City]

MAINE          04401-3319

[State and ZIP Code]

This Property is in   PENOBSCOT                              County in the State of Maine.

It has the following legal description:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B)   All buildings, structures and other improvements that are located on the property described in paragraph (A) of this section;

(C)   All rights in other property that I have as owner of the property described in paragraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the property";

(D)   All rents or royalties from the property described in paragraph (A) of this section; and

(E)   All of the property described in paragraphs (B) through (D) of this section that I acquire in the future, and all rights described in paragraphs (B) through (D) of this section that I acquire in the future.

It may be that I do not own the Property but am a tenant under a lease. In that case, the rights I am giving to Lender by this Mortgage are rights in my tenancy.

VMP -76P(ME) (0308)    CHL (09/05)              Page 2 of 10

LOAN #: ▓▓▓▓▓▓▓▓

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY.**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property other than claims and charges of record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because, as a result of something I have done, someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## UNIFORM PROMISES

I promise and I agree with Lender as follows:

1. **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE NOTE AND TO FULFILL OTHER PAYMENT OBLIGATIONS**

   I will promptly pay to Lender when due principal and interest under the Note and late charges as stated in the Note.

2. **(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance**

   **AGREEMENTS ABOUT MONTHLY PAYMENTS FOR TAXES AND INSURANCE**

   I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender (i) unless Lender tells me, in writing, that I do not have to do so or (ii) unless the law requires otherwise. Also, I will not have to pay to Lender any amount for which I am already making monthly payments to the holder of any superior mortgage or deed of trust, if it is a savings or banking institution.

   The amount of each of my payments under this Paragraph 2 will be the sum of the following:

   (i) One-twelfth of the estimated yearly taxes, assessments (including condominium and planned unit development assessments, if any) and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus

   (ii) One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus

   (iii) One-twelfth of the estimated yearly premium for mortgage insurance (if any).

   Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.")

   The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds." The Funds are additional protection for Lender in case I do not fulfill my obligations under the Note and under this Mortgage.

   **(B) Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance**

   Lender will keep the Funds in a savings or banking institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds, and the reason for each deduction.

   Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

LOAN #: ███████

If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit, plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 18 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

3.  **APPLICATION OF BORROWER'S PAYMENTS**
    Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

    (A)  First, to pay the amounts then due to Lender under Paragraph 2 above;
    (B)  Next, to pay interest then due under the Note; and
    (C)  Next, to pay principal then due under the Note.

4.  **BORROWER'S OBLIGATION TO PAY PRIOR MORTGAGES, CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY**
    I will keep all promises that I have made in any superior mortgage or deed of trust, including my promises to make payments when due. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will see that any claim, demand or charge that is made against the Property because an obligation has not been fulfilled (known as a "lien") is promptly paid or satisfied if the lien may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

5.  **BORROWER'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY**
    I will obtain hazard insurance to cover all buildings, structures and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender.

    I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals, subject to the terms of any superior mortgage or deed of trust.

    If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

VMP -76P(ME) (0308)      CHL (09/05)          Page 4 of 10

LOAN #: ▇▇▇▇▇▇

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed, or if it is not mailed, on the date the notice is delivered.

### 6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE AND CONDOMINIUM AND PUD DOCUMENTS

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If the Property is a unit in a condominium or in a planned unit development, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the condominium or the planned unit development.

### 7. LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

Although Lender may take action under this Paragraph 7, Lender does not have to do so.

### 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. However, before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

### 9. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender, subject to the terms of any superior mortgage or deed of trust.

### 10. CONTINUATION OF BORROWER'S OBLIGATIONS

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage.

ⓥ -76P(ME) (0308)        CHL (09/05)        Page 5 of 10

LOAN #: ▉▉▉▉▉▉▉

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

## 11. CONTINUATION OF LENDER'S RIGHTS

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 18 below, to demand that I make Immediate Payment In Full (see Paragraph 18 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

## 12. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Subject to the terms of Paragraph 17 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage. (In this Mortgage, the word "person" means any person, organization, governmental authority or any other party.)

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage. Any person signing this Mortgage but not signing the Note also agrees (i) that Lender may allow any other Borrower to delay or to change payments due under the Note or under this Mortgage and (ii) that Lender may make other accommodations under the Note or under this Mortgage. Lender may do this without obtaining anyone's consent and without modifying the effect of this Mortgage.

## 13. AGREEMENT ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it by certified mail addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it by certified mail to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 13.

## 14. LAW THAT GOVERNS THIS MORTGAGE

The state and local law that applies in the place that the Property is located will govern this Mortgage. This will not limit Federal law that applies to this Mortgage. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

LOAN #:

As used in this Mortgage, the words "costs," "expenses" and "attorneys' fees" include all amounts not prohibited by applicable law or limited in this Mortgage.

15. **BORROWER'S COPY OF THE NOTE AND OF THIS MORTGAGE**
I will be given copies of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records.

16. **REHABILITATION LOAN AGREEMENT**
I will comply with all of the terms and conditions of any home rehabilitation, improvement, repair, modernization, remodeling or similar loan agreement I have with Lender. If Lender requests it, I will sign and give to Lender an assignment of any rights or claims I might have against persons who supply labor, materials or services in connection with improving the Property. This assignment will be in a form acceptable to Lender.

17. **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all sums secured by this Mortgage if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Mortgage.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

NON-UNIFORM PROMISES

I also promise and agree with Lender as follows:

18. **LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**
Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 18 are met, Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

Lender may also require immediate payment in full if any of the events described in Paragraph 17 occur, even if the conditions stated in subparagraphs (A), (B) and (C) below are not met.

If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

LOAN #: ▆▆▆▆▆▆▆

Lender may require Immediate Payment In Full under this Paragraph 18 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 13 above, a notice that states:

    (i) The promise or agreement that I failed to keep;

    (ii) The action that I must take to correct that default;

    (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

    (iv) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;

    (v) That if I meet the conditions stated in Paragraph 19 below, I will have the right to have Lender's enforcement of this Mortgage discontinued and to have the Note and this Mortgage remain fully effective as if Immediate Payment In Full had never been required; and

    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Mortgage, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

19. **BORROWER'S RIGHT TO HAVE LENDER'S LAWSUIT FOR FORECLOSURE AND SALE DISCONTINUED**

Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A) I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and

(B) I correct my failure to keep any of my other promises or agreements made in this Mortgage; and

(C) I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and

(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If all of the conditions in this Paragraph 19 are fulfilled, then the Note and this Mortgage will remain in full force and effect as if Immediate Payment In Full had never been required.

20. **LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY**

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraphs 17 or 18 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. If Lender requires Immediate Payment In Full under Paragraphs 17 or 18 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases.

LOAN #: ▬▬▬▬▬

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

21. **LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL**
When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

22. **PAYMENT DURING FORECLOSURE**
I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded Immediate Payment In Full and begun foreclosure and sale under Paragraph 18 above. Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

23. **NOTICE TO CONSUMER 1.** Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty, except for minimum charges as permitted by law.

**REQUEST FOR NOTICE OF DEFAULT**
——————— **AND FORECLOSURE UNDER SUPERIOR** ———————
**MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

-76P(ME) (0308)     CHL (09/05)          Page 9 of 10

LOAN #: ▮▮▮▮▮

Signed, sealed and delivered in the presence of:

_____ (Seal)
JOHN A. KNAPPE                                    -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower
                                          (Sign Original Only)

STATE OF MAINE,
                                        Penobscot
On this  18th  day of  April 2006  ,  _____  ,  personally  appeared  the
above named _____
            John A. Knappe
_____
_____  and acknowledged
the foregoing instrument to be his/her/their free act and deed.

Before me, _____

Justice of the Peace/Notary Public
BOBBIE-JEAN ADAM
Notary Public • State of Maine
My Commission Expires Nov. 1, 2012

(Seal)

-76P(ME) (0308)    CHL (09/05)        Page 10 of 10

File Number: ▮▮▮▮▮

## EXHIBIT "A"

A certain lot or parcel of land, together with any improvements thereon, situated in Bangor, Penobscot County, Maine, more particularly bounded and described as follows:

Lot 165 according to a plan of lots made by Prentiss & Carlisle, Inc., and recorded in Penobscot Registry of Deeds, Plan Book 20, Pages 84-86, as amended by plan recorded in said registry, Plan Book 20, Page 108, hereby referred to for a further and more particular description.

Excepting and reserving herefrom so much of the land within the street lines delineated on said plans as is contiguous to said lot 165.

Also granting a right of way for all purposes of a way over the streets designated on said plans until such time as the same are accepted by the City of Bangor as public ways.

Subject to any and all easements of record.

PENOBSCOT COUNTY, MAINE

*Susan F. Bulay*
Register of Deeds

**EXHIBIT C**

Bk 13094 Pg31 #3813
02-15-2013 @ 10:55a

| | Recording Requested By:<br>Bank of America<br>Prepared By:<br>Diana De Avila<br>800-444-4502<br>1800 Tapo Canyon Road<br>Simi Valley, CA 93063 | When recorded mail to:<br>CoreLogic<br>Mail Stop: ASGN<br>1 CoreLogic Drive<br>Westlake, TX 76262-9823 |

This space for Recorder's use

Property Address:
19 Naylor St
.Bangor, ME 04401-3319
Property Location:
Township of BANGOR

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 1800 TAPO
CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto THE
BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-7 whose
address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063 all beneficial
interest under that certain Mortgage described below together with the note(s) and obligations therein described and
the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:      COUNTRYWIDE HOME LOANS, INC.
Borrower(s):          JOHN A KNAPPE
Date of Mortgage:     4/18/2006
Original Loan Amount: $24,460.00
Recorded in Penobscot County, ME on: 4/20/2006, book 10395, page 308 and instrument number 1248]

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
FEB 14 2013

                              COUNTRYWIDE HOME LOANS, INC.

                       By: _____
                              Janet Gordon
                              Assistant Vice President

Bk 13094 Pg32 #3813

State of California
County of Ventura

On __FEB 14, 2013__ before me, _____Linda J. Stone_____, Notary Public, personally
appeared _____Janet Gordon_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: _____Linda J. Stone_____ (Seal)
My Commission Expires: __October 2, 2015__

LINDA J. STONE
Commission # 1954842
Notary Public - California
Los Angeles County
My Comm. Expires Oct 2, 2015

DocID#

SUSAN F. BULAY, REGISTER
PENOBSCOT COUNTY MAINE E-RECORDED

13873  Pg87    #16554
06-24-2015 a 09:20a

RECORDING REQUESTED BY:
BANK OF AMERICA, N.A.

WHEN RECORDED MAIL TO:
CoreLogic
450 E. Boundary Street
Chapin, SC 29036

Attn: Assignment Unit
Doc

This Space for Recorder's Use Only

TITLE OF DOCUMENT:

# Quitclaim Assignment

THIS SPACE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

➤ 059-TITLE PAGE (R7/95)

## Quitclaim Assignment

WHEREAS, COUNTRYWIDE HOME LOANS, INC., is identified as the "Lender" on a certain mortgage executed by JOHN A KNAPPE, and bearing the date of the 18th day of APRIL, 2006 and recorded on the 20th day of APRIL, 2006 recorded in PENOBSCOT County Registry of Deeds for the State of Maine in Book 10395 at Page 308 (hereinafter the "Mortgage");

WHEREAS, as a result of one or more assignments of the Mortgage, Mortgage Electronic Registration System, Inc. ("MERS") is or was the mortgagee of record of the Mortgage as the nominee of COUNTRYWIDE HOME LOANS, INC., and its successors and assigns;

WHEREAS, COUNTRYWIDE HOME LOANS, INC., wishes to convey and assign any and all rights it may have under the Mortgage to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-7; and

WHEREAS, this Quitclaim Assignment is not intended to and does not modify or assign any of the rights, title or interests that MERS has or had in the Mortgage.

Accordingly, COUNTRYWIDE HOME LOANS, INC., hereby assigns and quit claims to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-7 all of its rights, title and interests (whatever they may be, if any) in the Mortgage to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-7.

Dated: 6/2/2015

COUNTRYWIDE HOME LOANS, INC.

*Sherry McAlister*

Sherry McAlister, Assistant Vice President

**Acknowledgment**

On ___6·2·15___ , before me, Melodye A Davis. Notary Public, personally appeared Sherry McAlister, Assistant Vice President of Countrywide Home Loans, Inc., whose identity was proven to me on the basis of satisfactory evidence to be the person who he/she claims to be and whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last written.



Melodye A Davis
Notary Public
Maricopa County, Arizona
My Comm. Expires 7-14-16

Notary Public: _Melodye A Davis_
My Commission Expires: _7·14·16_

JOHN A KNAPPE
19 NAYLOR STREET
BANGOR, ME 04401

RECORDING REQUESTED BY:
BANK OF AMERICA, N.A.

WHEN RECORDED MAIL TO:
CORELOGIC
450 E. BOUNDARY STREET
CHAPIN. SC 29036

PENOBSCOT COUNTY, MAINE

Susan F. Bulay
Register of Deeds

**EXHIBIT D**


CoreLogic

**Valuation Solutions**

## Residential Property BPO (Drive-by)        Order Information

| | |
|---|---|
| Lender/Client Reference #: | Owner: JOHN KNAPPE |
| Order #: | Lender/Client: Bank of America-SLM |
| | Lender/Client Address: 5401 N Beach St |
| Assignment Type: ☐ Purchase  ☒ Servicing | |
| ☐ Home Equity Loan  ☐ Other _____ | Fort Worth          TX    761372733 |

---

### Subject Property Analysis

Property Address: **19 NAYLOR ST**      Unit # _____  City: Bangor      State: ME  Zip: 044013319

County: Penobscot County    Type: ☒ SFR  ☐ Coop  ☐ PUD  ☐ Multi Unit/# of Units ____  ☐ Mfg  ☐ Vacant Land  ☐ Other

Occupancy: ☒ Owner  ☐ Tenant  ☐ Vacant          ☐ Condo  ☐ Attached  ☒ Detached  Project # of Units: ____  Dues Per Mo. $ ____

Has the subject property been listed over the prior 12 months?  ☐ Yes  ☒ No          Is the subject property currently listed?  ☐ Yes  ☒ No

Original List Date: N/A    Original List Price $ N/A    Current /Last List Price $ N/A    Total Days on the Market  N/A

Comments/Exception/Condition:  (based on provider's observations)

single family home built on a slab, appears to share driveway with neighbor. home has metal roof and vinyl siding. saw no repairs needed on exterior

Repairs and Improvements Required for Marketability and/or Livability of the property:

Estimate of repairs needed for subject property:

**Exterior:**

| | |
|---|---|
| Painting | $ 0.00 |
| Structural | $ 0.00 |
| Landscaping | $ 0.00 |
| Roof | $ 0.00 |
| Windows | $ 0.00 |
| Other | $ 0.00 |

Do you recommend repairs?  ☐ Yes  ☒ No

**Estimated Total Repair Costs: $** 0.00

Overall Condition:  ☐ Good  ☒ Average  ☐ Fair*  ☐ Poor*

*If Fair or Poor, please comment below and provide supporting photos if available:

Comments/Exception:

home appears to be in average condition, NO VISIBLE REPAIRS NEEDED FOR EXTERIOR

---

### Neighborhood Analysis

Location:  ☐ Urban  ☐ Suburban  ☒ Rural          Price Range: $ 110,500.00  to  $ 129,900.00

Similarity of Properties:  ☒ Very Similar  ☐ Somewhat Similar  ☐ Not Similar          Price Trending: ☐ Increasing  ☒ Stable  ☐ Declining

Built Out:  ☒ Under 25%  ☐ 25-75%  ☐ Over 75%          By _____ % over last _____ ☐ YR ☐ MO

Source: mls

Comments:  (REO activity, housing price trends, supply and demand, average marketing time)

supply and demand stable, reo activity stable, 90 days or less for marketing time  The average marketing time is 39 days

---

**Residential Property BPO (Drive-by)**

## Comparable Sales (List in order of comparability)

| Feature | Subject | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Address (include unit #, if applicable): | 19 NAYLOR ST | 156 THORNTON | 20 ROGER ST | 199 FALVEY ST |
| | Bangor      ME   044013319 | BANGOR     ME  04401 | BANGOR     ME   04401 | BANGOR     ME   04401 |
| Project Size (if applicable) | 0 | 0 | 0 | 0 |
| Data Source | town | MLS | MLS | MLS |
| Proximity To Subject (miles) | | 0.18 | 0.29 | 0.18 |
| Sale Price | 121,000.00 | 110,500.00 | 122,000.00 | 126,000.00 |
| REO/Short Sale:  (yes or no) | No | No | No | No |
| Date of Sale | 06/10/2016 | 07/28/2017 | 05/26/2017 | 07/14/2017 |
| Total Days on the market | 0 | 10 | 3 | 75 |
| Property Type | SFR | SFR | SFR | SFR |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Lot Size (acres) | 0.13 | 0.13 | 0.13 | 0.18 |
| Exterior Construction/Finish | vinyl | VINYL | VINYL | VINYL |
| Year Built (YYYY) | 1950 | 1953 | 1953 | 1953 |
| Condition | Average | Average | Average | Good |
| Gross Living Area (SF) | 1206 | 1060 | 1000 | 1188 |
| Bedrooms/Bath | 3         1 | 3         1 | 3         1 | 3         1 |
| Basement | 0 | 0 | 0 | 0 |
| Garage | 1c | 1C | 1C | 1C |
| Other Amenities | 0 | 0 | 0 | DECK |
| Other  hot tub | 0 | 0 | 0 | HOT TUB |
| Currently for sale? | No | No | No | No |

**Comments: (Explain how each comparable is superior/inferior or similar to the subject property and include Sales History Analysis for subject and comps)**

Subject Comments:

No 12 months sale history.  home was sold in 2016 arms length transaction.IT HAS A SHARED DRIVEWAY WITH NEIGHBOR, WHICH IS NOT ALWAYS DESIRABLE, home was built in the 1950's for base housing in the area, all comps used are the same EXCLUDING SHARED DRIVEWAY.

Sales Comparable 1:

No 12 months sale history.  VERY SIMILAR HOME, SAME LOT, CLOSE IN AGE AND SIZE

Sales Comparable 2:

No 12 months sale history.  VERY SIMILAR HOME

Sales Comparable 3:

No 12 months sale history.  VERY SIMILAR HOME, HAD MANY RECENT UPDATES

## Comparable Listings (List in order of comparability)

| Feature | Subject | Comp 1 | Comp 2 | Comp 3 |
|---|---|---|---|---|
| Address (include unit #, if applicable): | 19 NAYLOR ST | 33 JOWETT ST | 75 JOWETT ST | 115 FALVEY |
| | Bangor      ME   044013319 | BANGOR     ME  04401 | BANGOR     ME   04401 | BANGOR     ME   04401 |
| Project Size (if applicable) | 0 | 0 | 0 | 0 |
| Data Source | town | MLS | MLS | MLS |
| Proximity to Subject (miles) | | 0.14 | 0.03 | 0.27 |
| List Price | N/A | 129,900.00 | 127,000.00 | 119,000.00 |
| REO/Short Sale:  (yes or no) | No | No | No | No |
| List Date | N/A | 09/19/2017 | 08/31/2017 | 06/05/2017 |
| Total Days on the market | N/A | 7 | 26 | 113 |
| Property Type | SFR | SFR | SFR | SFR |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Lot Size (acres) | 0.13 | 0.16 | 0.14 | 0.13 |
| Exterior Construction/Finish | vinyl | VINYL | VINYL | VINYL |
| Year Built (YYYY) | 1950 | 1953 | 1952 | 1953 |
| Condition | Average | Good | Good | Average |
| Gross Living Area (SF) | 1206 | 1000 | 1000 | 980 |
| Bedrooms/Bath | 3         1 | 3         1 | 2         1 | 3         1 |
| Basement | 0 | 0 | 0 | 0 |
| Garage | 1c | 1C | 2C | NO |
| Other Amenities | 0 | 0 | 0 | 0 |
| Other  hot tub | 0 | 0 | 0 | 0 |

**Comments: (Explain how each comparable is superior/inferior or similar to the subject property and include Sales History Analysis for subject and comps)**

Listing Comparable 1:

No 12 months sale history.  VERY SIMILAR HOME WITH RECENT INPROVEMENTS

ListingComparable 2:

No 12 months sale history.  VERY SIMILAR, WITH ONLY 2 BEDROOMS AND 2 CAR GARAGE

Listing Comparable 3:

No 12 months sale history.  VERY SIMILAR HOME WITH NO GARAGE

**Residential Property BPO (Drive By)**

## Price Opinion Conclusions & Signature

This opinion or analysis is not an appraisal.  It is intended only for the benefit of the client, as permitted by state laws, for the purpose of (a) determining a potential price for sale listing purposes or (b) general default or mortgage servicing or (c) asset management purposes.

Price Opinion Analysis / Conclusions:

* OVERFLOW - SEE "ADDITIONAL FIELD TEXT ADDENDA" *

The BPO Provider's price opinion for  the subject property:

| | | |
|---|---|---|
| "As is" price opinion based on normal marketing time: | $ | 121,000.00 |
| "As repaired" price opinion: | $ | 121,000.00 |

"As is" price opinion (provide 90-day price unless otherwise instructed):

| | | | | | |
|---|---|---|---|---|---|
| ☐ < 30 days | $ | ☐ < 60 days | $ | ☒ < 90 days | $ 121,000.00 |
| ☐ < 120 days | $ | ☐ < 180 days | $ | | |

Other (as requested by client): $ _____  _____ (if applicable)

This report includes the following exhibits:

☒ Subject Photos
☒ Comparable Photos
☒ Listing Photos
☒ Location Map with subject listings and comparables

| | |
|---|---|
| BPO Provider Signature: | |
| Date Signed: | 09/26/2017 |
| BPO Provider Name: | KIMBERLY BROUNTAS |
| BPO Provider Company: | Better Homes In Garden Masillo |
| BPO Provider Address: | 1162 UNION ST |
| | BANGOR    ME    04401 |
| Phone Number: | 207-745-9588 |
| Email Address: | KIMBROUNTAS@GMAIL.COM |
| BPO Provider License #: | BA911158 |
| License State: | ME |

Form 7001BOADB
Version Date: 06/2010
Revision: 4
© 2016 Corelogic, Inc. All rights reserved.
CORELOGIC and the CoreLogic logo are trademarks of CoreLogic, Inc  and/or its subsidiaries.

Order #: _____

Page 3 of 3